UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| CHARLES F. LONG, | ) | CIV.  05-5003-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER GRANTING |
| GOVERNOR MIKE ROUNDS; WARDEN | ) | MOTION FOR SUMMARY |
| BOB DOOLEY; LT. MIKE DOYLE; | ) | JUDGMENT |
| UNIT MANAGER MIKE MULLER; | ) | |
| GARY CHRISTENSEN; MARLIN | ) | |
| ANDERSON; CPL. SCHRYUER; JOHN | ) | |
| PARSON; SECRETARY OF PRISONS | ) | |
| DOUGLAS WEBER, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Charles Long, filed a complaint alleging multiple causes of action against all defendants including excessive use of force and violation of his due process rights.  All defendants move for summary judgment on all claims.

Plaintiff moves for discovery and defendants oppose the motion.  Plaintiff also moves to amend his complaint to add evidence of other damages and a

claim seeking an injunction to prevent the refiling of criminal charges against him.[1]

## FACTS

Considering the facts in a light most favorable to Long, on October 22, 2003, Long pleaded guilty to third-offense DUI and was sentenced to two years in custody.  He was placed at the South Dakota State Penitentiary (SDSP) on December 8, 2003.  Defendants' Undisputed Material Facts ¶¶ 87-88, 90.  Long was transferred to the Yankton Trustee Unit (YTU) in Yankton, South Dakota, in March 2004.  Id. at ¶ 93.  Although Long desired to participate in work release while at the YTU, his circumstances did not allow for approval of his request.  Id. at ¶¶ 93-95.  On March 30, 2004, Long wrote a complaint letter to defendant Governor Rounds regarding the work release denial.  Id. at ¶ 96.  On about April 14, 2004, Governor Rounds informed Long that the YTU's decision was an internal matter Long must take up with YTU personnel.  Id. at ¶¶ 98-99.

Defendant Bob Dooley was warden at the Mike Durfee State Prison (MDSP) during the relevant time period.  Id. at ¶ 3.  Dooley had no personal

---

[1] Plaintiff and defendants both filed numerous other responses and counter responses related to the discovery and summary judgment motions.  Dockets 24, 25, 41, 42, 43, and 46.  The court finds these materials either duplicative or discussing allegations not addressed in the complaint.  The court declines to consider these documents as extraneous to the issues at hand.

involvement of any kind with Long.  Id. at ¶¶ 54-55.  Defendants Doyle, Muller, Christensen, Anderson, Schryuer, and Parsons were officers at the MDSP during the relevant time period.  Id. at ¶¶ 4-9.  Defendant Douglas Weber was interim secretary of the South Dakota Department of Corrections during the relevant time period.[2]  Id. at ¶ 2.

Around May 4, 2004, Long became loud and disruptive after again being told he was not eligible for work release.  Id. at ¶¶ 101-104.  Long engaged in a pattern of disruptive and threatening behavior, including appearing naked in his cell, threatening to assault officers with bodily fluids, and engaging in general passive and active resistance.  Id. at ¶¶ 108-121.  Long was moved to MDSP, which has better facilities than the YTU for disruptive prisoners.  Id. at ¶¶ 122-23.  On May 4-5, 2004, Long refused to cooperate regarding a number of matters, including non-responsiveness to shower opportunities.  Id. at ¶¶ 128-132, 133.  Long was warned that he would be required to take a shower the next day.  Id. at ¶ 133.  It is disputed as to whether Long's smell at this time was offensive or not.

Long had not showered for two days when correctional officers approached his cell on May 6, 2004.  Id. at ¶¶ 14, 134.  Officer Anderson told

---

[2] Weber also had letter contact with Long in January 2004 regarding Long's desire for a work release position.  Weber advised Long to pursue his grievance through proper administrative channels.  Id. at ¶¶  43-47, 49.

Long he needed to shower and Long was unresponsive. Id. at ¶ 134. The officers removed Long's clothing. Id. at ¶ 14. After Long continued to be non-responsive to requests that he take a shower, Officers Muller, Doyle, Christensen, Schryuer, Anderson, and Parsons prepared to carry Long to the shower. Id. at ¶¶ 135-36, 138-140. At least four of the officers picked Long up and carried him to the shower, despite some difficulty due to built up perspiration and oil on Long's skin. Id. at ¶¶ 141-45. Long remained unresponsive after the officers disrobed him and reacted violently when the water was turned on. Id. at ¶¶ 146-47. Long attempted to kick and bite the officers until he was eventually restrained and returned to his cell. Id. at ¶¶ 147-51. The force used by the officers was the minimum necessary to protect themselves and Long from injury. Id. at ¶¶ 154-55.

The officers did not see any blood; however, Long had a scab on his arm from a previous self-inflicted injury and a missing toenail evidencing a small amount of dried blood. Id. at ¶¶ 156, 165. Long did not claim the officers had caused the toenail injury and refused medical treatment. Id. at ¶ 165. Later the same day, Long was transferred to the SDSP, which is better equipped to deal with violent inmates. Id. at ¶ 160. Long was examined at the SDSP and found to have a missing toenail and two small abrasions on his arm and shoulder. Id. at ¶ 171. Long claimed the MDSP medical staff had removed his

4

toenail and otherwise refused him treatment.  Id.  Officers involved in the

May 6, 2004, incident required medical treatment and infectious disease

testing as a precautionary measure.  Id. at ¶ 164.

MDSP Operational Memorandum 3.3.A.2 governs use of force within the

MDSP  Id. at ¶ 72.  The first level of physical force available to MDSP officers is

"physical handling."  MDSP Operational Memorandum 3.3.A.2, Docket 29,

Affidavit of Sally Boyd, Ex. A, p. 4.  Physical handling is justified for moving

inmates failing to obey a lawful order.  Id.  Physical handling is also

appropriate where an inmate is unruly or a threat to the officer.  Id.

Operational Memorandum 3.3.C.4 governs hygiene standards for inmates.

Defendants' Undisputed Material Facts ¶¶ 73-74.  Bathing or showering is

recommended daily and may be required.  MDSP Operational Memorandum

3.3.A.2, Docket 29, Affidavit of Sally Boyd, Ex. B, p. 5.  Regular inmate

showering, recommended daily for regular inmates and every other day for

inmates in segregation, protects the health of inmates and promotes safety and

security by minimizing confrontations involving inmates angry at odiferous

fellow inmates.  Defendants' Undisputed Material Facts ¶¶ 75, 79.

## SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, a movant is

entitled to summary judgment if the movant can "show that there is no genuine

5

issue as to any material fact and that the movant is entitled to judgment as a matter of law."  In determining whether summary judgment should issue, the facts and inferences from those facts are viewed in the light most favorable to the nonmoving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348, 1355-56, 89 L. Ed. 2d 538 (1986).  Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986).  In determining whether a genuine issue of material fact exists, the court views the evidence presented based upon which party has the burden of proof under the underlying substantive law.  Anderson, 106 S. Ct. at 2513.

A party opposing a motion for summary judgment should include "a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." D.S.D. LR 56.1(C). The opposing party should also respond to each numbered paragraph of the moving party's statement of material facts.  Id.  The moving party's statement

6

of facts is deemed admitted if unchallenged by the opposing party.  LR 56.1(D).

In this action, each group of named defendants filed a statement of material

facts with their motion for summary judgment.  Long did not file a separate

statement of material facts and responded only generally to the defendants'

statement of facts, except Long did claim that whether he exuded a foul order

was subjective.  The court will deem defendants' statements of facts as

admitted, except where defendants allege that Long's cell smelled foul.

## DISCUSSION

### I.    Official Capacity Claims

Defendants move for summary judgment as to all defendants on official

capacity claims, alleging immunity.  States and state officials are not liable for

damages on claims alleged against them in their official capacity because of

Eleventh Amendment immunity.  Will v. Michigan Dep't of State Police, 491

U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

Long may seek injunctive relief, however, against a state official in his

official capacity to prevent future violations of federal law under the doctrine of

Ex Parte Young.  See Klingler v. Director, Dep't of Revenue, 281 F.3d 776, 777

(8th Cir. 2002).  The Eleventh Amendment is not a bar "where prospective relief

is sought against individual state officers in a federal forum based on a federal

right . . . ."  <u>Idaho v. Coeur d'Alene Tribe of Idaho</u>, 521 U.S. 261, 276-77, 117 S. Ct. 2028, 2038, 138 L. Ed. 2d 438 (1997).

In this particular instance, however, an injunction against Dooley, Doyle, Muller, Christensen, Anderson, Schryuer, and Parsons would be moot as to Long.  <u>Martin v. Sargent</u>, 780 F.2d 1334, 1337 (8th Cir. 1985).  These defendants work at the MDSP facility.  A requirement for injunctive relief is a showing of a real or an immediate threat that a plaintiff will be wronged again.  <u>Id.</u>  Long is no longer subject to incarceration at the MDSP, so no threat of future violations there exists.

As discussed more thoroughly in the individual capacity claims section, evidence is lacking of any past wrong on the part of Governor Rounds and Secretary Weber.  Because Long cannot establish that these individuals engaged in improper behavior in the first instance, he is unable to establish that he might be "wronged again" by either Rounds or Weber.  Long has no official capacity claim against any defendant.

## II.    Individual Capacity Claims

### A.    Excessive Force

Long alleges that all defendants violated his Eighth Amendment right not to be subjected to cruel and unusual punishment when defendants used

8

excessive force during the shower incident of May 6, 2004.[3]  Eleventh
Amendment immunity does not bar claims against state officials in their
individual capacities.  Hafer v. Melo, 502 U.S. 21, 30-31, 112 S. Ct. 358, 116 L.
Ed. 2d 301 (1991) (quoting Scheuer v. Rhodes, 416 U.S. 232, 238, 94 S. Ct.
1683, 40 L. Ed. 2d 90 (1974)).  A qualified immunity defense, however, may
shield state officials sued in their individual capacities.  Hafer, 502 U.S. at 25.
The doctrine of qualified immunity protects officials from frivolous suits that
would impede their ability to discharge their duties and discretionary
functions.  Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000).  Thus, officials
receive immunity so long as "their actions could reasonably have been thought
consistent with the rights they are alleged to have violated."  Id. (quoting
Anderson v. Creighton, 483 U.S. 635, 638, 107 S. Ct. 3034, 3038, 97 L. Ed. 2d
523 (1987)). To determine whether defendants should be denied qualified
immunity, the court must apply a three-part test: (1) a plaintiff must prove a
violation of a constitutional or statutory right; (2) the right must clearly be
established at the time of the alleged violation; and (3) a reasonable official

---

[3] Long also claims the defendants' actions violate SDCL 24-15A-4.  Long's
Summary Judgment Response, Docket 39.  Long does not mention any state
law claims in his complaint.  Even if he had, the court notes the list in SDCL
24-15A-4 is a non-exclusive list related to punishment.  As discussed more
thoroughly in this order, the force used against Long was not punitive, but the
minimum necessary for policy enforcement and protection.

would have known the alleged action violated that right.  Liebe v. Norton, 157 F.3d 574, 577 (8th Cir. 1998); Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995).

The first and second prongs of the qualified immunity test are met here. The prohibition of cruel and unusual punishment in the Eighth Amendment of the Constitution includes the protection of prisoners from excessive force. Jones v. Shields, 207 F.3d 491, 494-95 (8th Cir. 2000).  Thus, the first prong is satisfied.  Second, the Eighth Circuit clearly established that the Eighth Amendment protects an inmate from excessive force.  Id.  Thus, the remaining qualified immunity issue is "whether a reasonable official would have known that the alleged action indeed violated [Long's Eighth Amendment right]." Gregoire, 236 F.3d at 417.

To establish excessive force in violation of the Eighth Amendment, Long must demonstrate that the force used against him was applied "maliciously or sadistically to cause harm."  Estate of Davis by Ostenfeld v. Delo, 115 F.3d 1388, 1394 (8th Cir. 1997) (quoting Hudson v. McMillian, 503 U.S. 1, 6, 112 S. Ct. 995, 998, 117 L. Ed. 2d 156 (1992)).  The court can consider the need for force, the relationship between the force needed and the force actually applied, and any injury suffered by Long.  Id.  Officers may apply force "in a good faith effort to maintain or restore discipline."  Id.

10

### 1.    Rounds, Dooley, and Weber

Defendants Rounds is sued in his individual capacity as having supervisory oversight of state prisons.  Dooley and Weber are sued in their individual capacities as supervisory officials employed by the MDSP and the SDDOC during the relevant time period.  "[S]upervisors are not liable for Eighth Amendment claims on a respondeat superior theory." Choate v. Lockhart, 7 F.3d 1370, 1376 (8th Cir. 1993) (citation omitted).  Supervisors incur liability only if they are personally involved in a constitutional violation or if their corrective inaction amounts to deliberate indifference.  Id.  A supervisor's general prison operation responsibilities alone do not constitute personal involvement necessary to support any supervisor liability.  Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997).  See also Gregoire v. Weber, No. CIV. 97-4126, at 13 (D.S.D. Dec. 20, 1999).  "'The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see.'" Ripson v. Alles, 21 F.3d 805, 809 (8th Cir. 1994) (quoting Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988)).

At the time of the shower incident, Weber served as Secretary of the SDDOC.  He delegated the responsibility of carrying out the MDSP policies to the warden of the MDSP.  Weber did not know Long prior to the incident and was not involved in his medical or mental health treatment.  There is no

11

evidence in the record to suggest that Weber knew anything regarding the
shower incident prior to its occurrence.

Dooley is the warden of MDSP. "[A] warden's general responsibility for
supervising the operations of the prison is insufficient to establish personal
involvement." Ouzts v. Cummins, 825 F.2d 1276, 1277 (8th Cir. 1987).
Because no evidence shows Dooley's actual knowledge of Long's
circumstances, he is not deliberately indifferent. See Boyd, 47 F.3d at 968
(qualified immunity applies to officials who had no knowledge of the inmate's
condition or treatment). Nothing in the record suggests that Dooley knew that
Long was accused of not showering and the forcible attempt to make Long
shower. Long's letter to Dooley merely inquired about Long's inability to
participate in work release. Dooley encouraged Long to pursue his grievance
through proper administrative channels.

Finally, Governor Rounds was not personally involved in any alleged
violations of Long's rights. Nothing in the record suggests Rounds knew
anything about the shower incident or had any indication of issues leading up
to it other than Long's request for work release. Rounds had no personal
contact with Long and no direct or indirect knowledge of Long's disciplinary
issues.

12

The record clearly demonstrates that Rounds, Dooley, and Weber had no personal involvement with Long on the day he was subjected to a forcible shower. Therefore, they cannot be held liable based on their personal involvement in the shower incident.

The next issue is whether any of these supervisors' "corrective inattention amounts to deliberate indifference to or tacit authorization of the violative practices." Choate, 7 F.3d at 1376. There is no evidence in the record to show that these defendants were aware that any MDSP staff were using excessive force. They were not informed regarding any incident that day. Without personal knowledge of any allegedly violative practices on May 6, 2004, these defendants cannot be held liable for failing to correct or tacitly authorizing that conduct. There is no basis for supervisor liability in the record.

### 2. Doyle, Muller, Christensen, Anderson, Schryuer, and Parsons

The officers actually involved on the day of the shower incident were aware of events leading up to the incident and were involved in varying capacities in the shower incident, subsequent restraint, and return to Long's jail cell on the day in question. The court must determine, considering all circumstances, whether reasonable officers in these circumstances would have known their actions violated Long's Eighth Amendment right to be free of

13

excessive force.  The question is not whether force was applied, but whether that force was excessive.  <u>Jones</u>, 207 F.3d at 495 (noting that "[n]ot every malevolent touch by a prison guard gives rise to a federal cause of action.").

Here, Long had repeatedly engaged in noncompliant behavior, including many incidents of aggression and attempted violence.  Long was told to shower and he refused in violation of MDSP Operational Memorandum 3.3.C.4. Officers were then justified in carrying Long to the showers.  MDSP Operational Memorandum 3.3.A.2.  The officers carefully carried Long to the showers with the intent to clean him, but Long reacted violently.  The officers exerted only the force necessary to restrain Long for his own safety and the safety of others. <u>See</u> <u>id.</u>  While Long received minimal injuries as the result of this encounter, the officers also required some medical treatment.  Despite Long's assertion that he did not smell bad, the officers expressed a good faith belief that Long's smell was offensive and that he was non-compliant with prison hygiene policies.  The facts demonstrate no sadistic or malicious action on the part of any officer.  Because reasonable officials would not have thought that the measures taken to address Long's violent reaction to officials' attempts to make him comply with prison hygiene policies consisted of excessive force, the officer defendants' motion for summary judgment as to Long's excessive force claim is granted.

14

**B.    Due Process**

Long alleges his due process rights were violated when officers attempted to forcibly clean him without due process of law in violation of the Fourteenth Amendment.  Long further alleges that he was denied due process in the attempted imposition of a forced shower without proper notice and a hearing. For minor rule violations, prisoners may be subject to less due process as provided for in an inmate handbook.  Boutchee v. Grossheim, 11 F.3d 101, 103 (8th Cir. 1993).

Here, the facts show that Long repeatedly refused to comply with the showering policy, despite a plethora of warnings.  The only force applied to Long prior to his violent outburst involved carrying him and disrobing him in preparation for a shower Long was required to take.  Only after Long exploded in a violent outburst did officers engage in force intended to subdue Long. Force necessary to quell a disturbance requires no advance hearing.  Parkus v. Delo, 135 F.3d 1232, 1234-35 (8th Cir. 1998).  The Inmate Handbook and the Constitution require no more than the process afforded Long.  Long has not demonstrated any disputed issue of material fact as to denial of due process. For all of these reasons, Long's claims of constitutional deprivation of due process fails and summary judgment for all defendants is appropriate.

15

Long moves to amend his complaint, but he did not submit a proposed amended pleading.  Failure to submit the proposed amended pleading is grounds for denial of the motion to amend.  United States ex rel. Toni Lee v. Fairview Health Sys., No. 04-3141 (8th Cir. 2005).  Furthermore, the proposed amendments would be futile because Long is not entitled to recover any damages and the named defendants in this litigation are not responsible for deciding whether to refile the assault charge.

## CONCLUSION

Viewing the evidence most favorably to Long, there are no issues of fact for a jury to determine as to any of the named defendants.  Rounds, Dooley, Doyle, Muller, Christensen, Anderson, Schryuer, Parsons, and Weber are entitled to summary judgment.  This ruling further renders Long's motion for discovery moot.  Long's motion to amend is also denied.  Accordingly it is hereby

ORDERED that defendants' motion for summary judgment (Docket 26) is granted;

IT IS FURTHER ORDERED that Long's motion for discovery (Docket 19) is denied as moot; and

16

IT IS FURTHER ORDERED that Long's motion to amend (Docket 45) is denied as moot.

Dated July 8, 2005.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE